NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DONNA MILLER,

Plaintiff,

v.

CAREMINDERS HOME CARE, INC.,

Defendant.

Civil Action No. 13-cv-5678 (JAP)

**OPINION**

PISANO, District Judge

Presently before the Court is Defendant CareMinders Home Care, Inc.'s ("CareMinders") motion to transfer this matter to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a) [docket # 3]. For the reasons set forth below, Defendant's motion for transfer is GRANTED.

## I. BACKGROUND

CareMinders is a Georgia corporation headquartered in Alpheretta, Georgia, and operates as "a franchisor that has developed a specialized system for the operation of home care businesses that offer companionship, personal, skilled and related home support services and assistance to the elderly, handicapped, convalescing, or dependent individuals in their homes . . . in nursing homes, hospitals, assisted care facilities, and other medical settings." [docket # 3 p. 3]. Platinum is a New Jersey corporation with its principal place of business in Brick, New Jersey. According to Defendant, Plaintiff Donna Miller is identified in New Jersey corporate records as

Platinum's Vice President and part of its "Management," and she identifies herself as an "Owner" of Platinum. *Id*. at 4.

**A. Franchise Agreements**

On December 16, 2009, Plaintiff's husband, Eric Miller, acting behalf of Platinum as Platinum's President, executed two franchise agreements and an area development agreement with CareMinders.[1] *Id*. at 3. The two "nearly identical" franchise agreements authorized Platinum to operate one CareMinders Home Care business in Monmouth County and another in Ocean County (collectively referred to as the "Franchise Agreements") and "granted Platinum conditional licenses to participate in the CareMinders System and operate a CareMinders Home Care business". *Id*.

The Franchise Agreements include a forum selection clause which provides that the "Franchisee and each Guarantor consents and agrees that venue shall be proper in . . . (A) the state or superior court of Fulton County, Georgia . . . and (B) the United States District Court for the Northern District of Georgia, Northern Division . . . in all lawsuits relating to or arising out of this Agreement." *Id*. Ex. A at 44. Also included in the Franchise Agreements is an arbitration clause which states that "[e]xcept with respect to injunctive or other equitable relief requested by Franchisor . . . upon demand of any party, whether made before or after institution of any judicial proceedings, any dispute, claim or controversy arising out of, connected with or relating to this Agreement . . . between or among parties to this Agreement shall be resolved by binding arbitration." *Id*., Ex. A at 43.

[1] The Franchise Agreements were executed by Plaintiff's husband, Eric Miller, as Platinum's President, who also entered two separate Guaranty agreements under which he "contractually agreed to personally, absolutely and unconditionally guaranty to CareMinders, among other things the 'complete and punctual payment and performance of each and every agreement obligation, undertaking, representation and covenant . . . set forth in the Franchise Agreements, the same as if Guarantor was a direct party thereto.'" [docket # 3 p. 3-4].

**B. Pending Suit in the Northern District of Georgia**

From December 2009 through May 2013, Platinum operated a CareMinders Home Care business pursuant to the Franchise Agreements. According to Defendant, on May 16, 2013, "Platinum abruptly ceased operating as a CareMinders franchisee" and made an announcement stating "CareMinders Home Care Brick Changes name to Platinum Home Care. Same Owners, same outstanding caregivers, and the same excellent quality Home Care." *Id*. at 5. Thereafter, Defendant alleges that Eric Miller, on behalf of Platinum, sent emails to several current and former CareMinders franchisees and regional developers, in which he "made defamatory statements calculated to undermine the CareMinders System and convince other CareMinders franchisees to breach their respective franchise agreements and abandon the CareMinders System." *Id*. at 6. According to Defendant, the emails sent by Eric Miller outlined Platinum's breaches of the Franchise Agreements and encouraged other franchisees to breach their agreements with CareMinders. *Id*.

On July 17, 2013, CareMinders filed suit against Platinum and Eric Miller in the United States District Court for the Northern District of Georgia seeking injunctive relief and monetary damages relating to Platinum's alleged breach of the Franchise Agreements (the "Georgia Action'). *See* Civ. Act. # 13-2363 N.D.Ga. CareMinders' Complaint asserts six causes of action for: (1) Breach of the Franchise Agreements Against Platinum; (2) Corporate Libel/Defamation against Platinum and Eric Miller; (3) Tortious Interference with Business Relations against Platinum and Eric Miller; (4) Breach of Guaranties against Eric Miller; (5) Attorneys' Fees against Platinum and Eric Miller; and (6) Punitive Damages against Platinum and Eric Miller. In the first three claims, CareMinders is seeking injunctive relief.

On July 29, 2013, Eric Miller instituted arbitration against CareMinders before the American Arbitration Association ("AAA") seeking $750,000 and stating claims for: (1) Breach of the Franchise Agreements; (2) Breach of the Covenant of Good Faith and Fair Dealing; (3) Fraudulent Inducement; (4) Violation of the New Jersey Consumer Fraud Act; and (5) Violation of the New Jersey Franchise Practices Act. Although Eric Miller's Demand for Arbitration requested the arbitration take place in New Brunswick, New Jersey, in a letter delivered to the parties on August 1, 2013, AAA ruled that pursuant to the arbitration provision of the Franchise Agreements, absent an agreement by the parties to an alternate location, "the hearing locale shall be Fulton County, GA."

On August 28, 2013, Platinum and Eric Miller moved to dismiss CareMinders' Complaint in the Georgia Action, requesting that the court compel arbitration of the parties' dispute in New Jersey. The court denied the motion to compel arbitration of CareMinders' claims seeking equitable or injunctive but granted the motion to compel arbitration of the remaining claims and stayed the matter pending arbitration in Fulton County, Georgia. Civ. Act. # 13-2363 N.D.Ga, docket # 23 p. 6-7.

**C. Donna Miller's Present Suit Against CareMinders**

On September 9, 2013, Donna Miller filed suit against CareMinders in the Superior Court of New Jersey, Monmouth County, claiming that CareMinders made false representations to Donna and Eric Miller regarding the purchase of a CareMinders franchise and asserting claims for: (1) Violation of the New Jersey Consumer Fraud Act; (2) Breach of the Covenant of Good Faith and Fair Dealing; and (3) Fraud. On September 24, 2013, CareMinders removed the present action to this Court.

In sum and substance, Plaintiff claims that while she is not a party to the Franchise Agreements and is therefore not bound by their terms, she contributed personal funds to Platinum's purchase of the CareMinders franchises and was damaged by allegedly false statements made to her by CareMinders executives during the process of being "recruited" to open a CareMinders franchise. [docket # 7]. The alleged misrepresentations relate to the "break-even point" for a CareMinders franchise, the franchises' revenue sources and the maximum initial investment required. *Id*. at 4-5. Plaintiff claims that after her husband, Eric Miller "squandered their marital assets," including "money rightfully belonging to Plaintiff Donna Miller," on the CareMinders franchises, she realized the representations made by CareMinders where "patently false." *Id*. at 5.

Plaintiff further alleges that CareMinders was aware that she "never intended to be a franchisee" but knew that she intended to invest her "personal money" and "martial assets" into a CareMinders franchise "without becoming a franchisee." *Id*. at 5-6. According to Plaintiff, the alleged misrepresentations made by CareMinders induced her to "invest her share of marital monies" into the purchase of the franchise, which resulted in the loss of her entire investment. *Id*. at 6.

## II. DISCUSSION

According to Defendant, this action should be transferred to the United States District Court for the Northern District of Georgia or otherwise dismissed pursuant to 28 U.S.C. § 1404(a) based on the pending arbitration and suit between CareMinders and Eric Miller. Plaintiff Donna Miller opposes transfer and claims that the first-filed rule does not apply because the alleged misrepresentations were made prior to her husband entering into the franchise agreements and therefore no "substantial overlap" exists between the suits.

**A. The First-Filed Rule**

The first-filed rule is a rule of comity requiring that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it." *EEOC v. Univ. of Pennsylvania,* 850 F.2d 969, 971 (3d Cir. 1988). The purpose of the first-filed rule is to encourage sound judicial administration and to promote comity among the courts in the federal system. *Id*. "It is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals." *Id*. at 974 (quoting *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 930 (3d Cir. 1941)). "Comity must serve as a guide to courts of equal jurisdiction to exercise forbearance to avert conflicts and to avoid 'interference with the process of each other.'" *Id*. (quoting *Kline v. Burke Constr. Co.,* 260 U.S. 226, 229 (1922)).

Although Plaintiff Donna Miller is not a named party to the Georgia action, "[t]he applicability of the first-filed rile is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed cases substantially overlaps with that of the earlier one." *Villari Brandes & Kline, P.C., v. Plainfield Specialty Holdings II, Inc.,* 2009 WL 1845236, at *6 (E.D.Pa. June 26, 2009); *see also Maximum Human Performance, Inc., v. Dymatize Enters., Inc.,* 2009 WL 2778104, at *3 (D.N.J. Aug. 27, 2009) ("For the first-to-file rule to apply, there must be a substantial overlap between the two actions, but the issues and parties involved need not be identical.") (internal quotations omitted).

The Georgia action was first filed. CareMinders' complaint was filed in the Georgia action on July 17, 2013, and Donna Miller filed her complaint in New Jersey Superior Court on September 9, 2013. The touchstone of the first-filed rule analysis is whether there is

"overlapping subject matter" between the two claims. *Catanese v. Unilever,* 774 F. Supp. 2d 684, 687 (D.N.J. 2011). Plaintiff argues that the subject matter of the present action does not substantially overlap with the subject matter of the Georgia action because the present case is based upon allegedly fraudulent misrepresentations made to Plaintiff prior to her husband entering into the Franchise Agreements, and therefore "does not hinge on the enforceability and construction of the same franchise agreements" as those in the Georgia action. [docket # 7 p. 8]. However, Count II of Plaintiff's Complaint specifically alleges that CareMinders breached the Franchise Agreements, and in Count I and Count III, Plaintiff alleges deceptive commercial practices and fraudulent misrepresentations related the execution of the Franchise Agreements. Accordingly, the Court finds that the subject matter of the present suit substantially overlaps with the subject matter of the first-filed Georgia action.[2]

While the Third Circuit recognizes some limited exceptions to the first-filed rule, including "inequitable conduct, bad faith, or forum shopping," none of these exceptions apply to the instant action. *See EEOC*, 850 F.2d at 972. CareMinders' decision to file a lawsuit against Eric Miller and Platinum was based on the alleged breach of the Franchise Agreements and was filed in the forum designated by the parties in the Franchise Agreements. Therefore, the first-filed rule applies to the instant action and weighs heavily in favor of transferring this case to the Northern District of Georgia.

**B. Transfer Under 28 U.S.C. § 1404(a)**

28 U.S.C. § 1404(a) states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party bears the burden of establishing the need

[2] The Court makes no judgment regarding the applicability of the forum selection clauses and arbitration clauses contained in the Franchise Agreements to Plaintiff Donna Miller.

for a transfer, and must submit "adequate data of record" to facilitate the Court's analysis. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 248 (1981).

The Court's analysis under 1404(a) will depend upon the facts of each case. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). In the Third Circuit, a court considering a motion to transfer should consider the private interests of the litigants as well as the public interest in the fair and efficient administration of justice. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995). Factors relevant to the parties' private interests include the plaintiff's forum preference, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witness to the extent that they may be unavailable for trial in the original forum, and the location of the books and records. *Id.* The public interest factors include: "(1) judgment enforceability; (2) 'practical considerations that could make the trial easy, expeditious, or inexpensive'; (3) court congestion in each district; (4) local interest in deciding controversies at home; (5) the relevant public policies of each forum; and (6) in diversity cases, the district judge's familiarity with the applicable state law." *Thorlabs, Inc. v. Townsend Commc'ns, L.L.C.,* 2004 WL 1630488 (D.N.J. June 30, 2004) (citing *Jumara,* 55 F.3d at 879-80).

Plaintiff contends that while the alleged fraudulent representations were made to her in Georgia, the results of those misrepresentations took place in New Jersey. Additionally, Plaintiff claims that Platinum's employees, "all of whom may be witnesses," are New Jersey residents, and requiring them to travel to Georgia "would be inappropriate and inefficient." [docket # 7 p. 13]. Plaintiff argues that the "convenience of these witnesses, alone, is a significant reason" why the case should not be transferred. *Id.*

The private factors in this case weigh in favor of transfer. The plaintiff's choice of forum is usually afforded great deference and "should not be lightly disturbed." *Jumara,* 55 F.3d at 879. However, the Plaintiff's choice of forum is entitled to less deference when a related action is pending in a different forum. *See Blanning v. Tisch,* 378 F. Supp. 1058, 1061 (E.D.Pa. 1974) (noting that plaintiff's choice of forum is by no means dispositive, especially when a related action is already pending in a different forum). The defendant's choice of forum is the Northern District of Georgia where CareMinders filed their suit against Platinum and Eric Miller, and is the forum designated in the Franchise Agreements. Despite Plaintiff's contentions to the contrary, the remaining private factors weigh in favor of transfer. The alleged fraudulent misrepresentations were made to Plaintiff by CareMinders executives in Georgia, and while Plaintiff contends that the parties and witnesses would be inconvenienced by litigating in Georgia, Platinum and Eric Miller are already engaged in litigation in Georgia and Plaintiff has not argued that she lacks the resources to litigate her claims in Georgia. Accordingly, the Court finds that the private factors weigh in favor of transfer.

The Court also finds that the public factors weigh in favor of transfer. When a related lawsuit is pending elsewhere, transferring the case serves the interests of justice because it eliminates the possibility of inconsistent results. *See Lawrence v. Xerox Corp.,* 56 F. Supp. 2d 442, 453-45 (D.N.J. 1999) ("Transfer in such circumstances has numerous benefits: Cases can be consolidated before one judge thereby promoting judicial efficiency; pretrial discovery can be conducted in a more orderly manner; witnesses can be saved the time and expense of appearing at trial in more than one court; and duplicative litigation involving the filing of records in both courts is avoided, thereby eliminating unnecessary expense and the possibility of inconsistent results.") (internal quotations omitted). "When two suits involving the same parties and subject

matter are pending concurrently, the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit." *Ricoh Co. v. Honeywell, Inc.,* 817 F. Supp. 473, 487 (D.N.J. 1993).

Given the pending and substantially related action in the Northern District of Georgia, the Court finds that transfer of the present action is warranted. The private and public factors weigh in favor of transfer and there are no special circumstances that justify giving priority to the present action over the first-filed action in Georgia. The transfer of this case to the Northern District of Georgia will ensure that the dispute between the parties is resolved efficiently, avoid duplicitous litigation and serve the policy of judicial comity. Therefore, the Court transfers the present action to the United States District Court for the Northern District of Georgia.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Transfer [docket # 3] is GRANTED and the Court transfers this action to the United States District Court for the Northern District of Georgia. An appropriate Order accompanies this Opinion.

Date: April 30, 2014

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge